## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**PATRICIA A. MEREDITH,**
       **Plaintiff,**

**v.**                                              **Case No: 5:09cv372/RH/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
       **Defendant.**

_____

## REPORT AND RECOMMENDATION

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Meredith's application for disability insurance benefits under Title II of the Act.

       Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

       Ms. Meredith filed an application for benefits claiming an onset of disability as of March 15, 1998.  The application was denied initially and on reconsideration, and Ms. Meredith requested a hearing before an administrative law judge (ALJ).  A

hearing was held on February 10, 2005 at which Ms. Meredith was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 671-678) and Ms. Meredith requested review by the Appeals Council. The Appeals Council reversed based on the ALJ's failure to evaluate Ms. Meredith's fibromyalgia or make a finding of severity (tr. 692-93). On remand, a second hearing was held on June 8, 2007. Ms. Meredith was again represented by counsel. A vocational expert was present and testified, and an orthopedic surgeon, Peter Schosheim, M.D. participated by telephone. At the hearing Ms. Meredith and her attorney amended her onset date to December 1, 2002. The ALJ entered an unfavorable decision (tr. 22-29) and Ms. Meredith requested review by the Appeals Council. Her counsel filed a brief but did not submit additional evidence. The Appeals Council declined review (tr. 10-12). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Meredith met the insured status requirements of the Social Security Act only through December 31, 2002; that she had not engaged in substantial gainful activity since her onset date of December 1, 2002; that she had severe impairments of (1) disorders of the muscles and ligaments, (2) osteoarthritis, (3) status post back surgery, (4) myofascial pain syndrome, (5) fibromyalgia, and (6) diabetes mellitus, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1; that during an eight hour workday Ms. Meredith had the residual functional capacity to lift and/or carry and push/pull 20 pounds occasionally and 10 pounds or less more frequently, could walk and/or stand for approximately six hours and to sit for

approximately six hours, but never crawl, work at unprotected heights or climb ropes or ladders, could occasionally climb ramps or stairs and kneel, crouch or stoop; that she could use her arms and hands for reaching, handling and feeling without limitation and had no visual limitations; that she retained the residual functional capacity for a significant range of work at the light level of exertion; that she was capable of performing her past relevant work as a parts clerk and security guard; and that she was not under a disability as defined under the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into

account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.920 (2009) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2009) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. See 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe physical or mental impairment that meets the duration requirement?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 to subpart P of 20 C.F.R. Part 404 and meet the duration requirement?

4. Considering the individual's residual functional capacity, can the individual perform past relevant work?

5. **Can the individual perform other work given the individual's residual functional capacity, age, education and work experience?**

(*Id*.)

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

It is important at this point to put the chronology of this case in context. Ms. Meredith initially claimed that her onset of disability dated from March 15, 1998. However, at the hearing, her attorney, with her consent, changed the onset date to December 1, 2002 (tr. 917-18).[1] The ALJ found, and Ms. Meredith does not dispute, that her date last insured for insurance purposes was only one month later, on December 31, 2002. That means that in order to qualify for disability income benefits she had to prove she became disabled before December 31, 2002, presumably during the relevant period of December 1 through December 31, 2002.

The medical record overall shows that Ms. Merritt was having health problems as early as 1996 and that during the period from June 26, 2000 to May 25, 2001, she received routine treatment at the Tyndall Air Force Base in Panama City, Florida.

---

[1]This is seemingly a tacit acknowledgment that she could not prove disability before that date.

During that period she received a steroid injection for an injured shoulder, had an endoscopy for gastritis, complained of knee pain and was given Vioxx, and complained hip problems (tr. 334-360).

The medical record is then silent until eight months later when, on February 1, 2002, she was seen by an Air Force physician for a general check up. The physician noted that he had last seen Ms. Meredith in May 2001 and that she was currently complaining of chronic knee and hip pain. She had been referred to a rheumatologist who placed her on Vioxx but at some point during the previous several months she had stopped using her medication and tried some natural supplements. That apparently made her case worse and she wanted to go back to medication. Physical examination revealed no abnormalities. The Air Force physician's assessment was fibromyalgia, recurrent, as well as knee, hip and back pain. She was given Vioxx and Klonopin. Ms. Meredith returned to the Air Force physician a month later on March 12, 2002, essentially unchanged. It was noted that a rheumatologist had diagnosed her with fibromyalgia but she continued to complain of aches and pains. Her physical examination was essentially normal.

There is no record that she saw any physician between March 12, 2002 and her alleged onset date of December 1, 2002. Moreover, she did not see any physician between that date and her date last insured of December 31, 2002. In fact, her next relevant treatment was on February 27, 2003 when she was seen by Hulon Crayton, M.D., an internist. Dr. Crayton noted that he had not seen Ms. Meredith since July 2001 because apparently she had been unable to get a referral from the Air Force. She complained of bilateral leg pain. She had a boot on her left foot because of recent toe surgery but had full range of motion in all joints without swelling. Fibromyalgia trigger point examination was positive. Dr. Crayton's assessment was fibromyalgia, and he increased her Klonopin and Darvocet. He also ordered electromyograms and nerve conduction studies to determine whether there was any peripheral neuropathy. Ms. Meredith saw Dr. Crayton on essentially a

monthly basis for the next eight years. Her condition never really changed. She would have some improvement and then revert back to severe pain.

Also, during the period after her date last insured and beginning in November 2003, she was seen by an orthopedist, James Talkington, M.D., who treated her for a wrist fracture and knee problems. As with Dr. Crayton, her knee problems waxed and waned and when Dr. Talkington saw her last in March of 2006, she had broken her wrist, but that injury healed without any further problems (tr. 756-763).

## DISCUSSION

Ms. Meredith contends that the ALJ erred in (1) considering only objective medical evidence in determining her residual functional capacity, (2) failing to consider the medical expert's testimony concerning medical evidence dated after the relevant period and (3) assessing her credibility, and that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Meredith was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

Although Ms. Meredith advances her arguments in three parts, the thrust of this appeal goes to her subjective complaints of pain caused primarily by fibromyalgia. The medical evidence, when examined over its entire range, shows a significant difference between Ms. Meredith's treatment before and after her date last insured. Prior to the relevant period Ms. Meredith had surgery to correct muscle entrapment in her leg, she received sporadic treatment from the Air Force, and she was diagnosed by a rheumatologist with fibromyalgia. Her last visit to the Air Force clinic was fully eight months before her onset date, and she sought no other treatment during that period. During the critical relevant one month between her

onset and her date last insured she sought no treatment at all, and she waited almost two months after her date last insured before going to a doctor.

Ms. Meredith contends that her fibromyalgia, which the ALJ found to be severe but not disabling, was in fact disabling and that the ALJ did not adequately discount her testimony on the degree of pain she suffered. The diagnosis of fibromyalgia is based largely on the patient's subjective complaints, and positive laboratory findings are simply unavailable. The disease has been recognized by The American College of Rheumatology as both real and difficult to confirm:

> Fibromyalgia is especially confusing and often misunderstood because almost all its symptoms are also common in other conditions. . . . Unfortunately, because certain symptoms lack physical and laboratory findings (signs), but depend mostly on a person's report of complaints and feelings (symptoms), these syndromes are often viewed as not being real or important.

Arthritis Foundation & American College of Rheumatology, Arthritis *Information: Fibromyalgia* (1992). The American College of Rheumatology has developed diagnostic criteria for fibromyalgia. A person can be affirmatively diagnosed with the condition if he or she has widespread pain in combination with tenderness in at least 11 of 18 specific tender point sites. *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases, *Questions and Answers About Fibromyalgia* (1999), available at http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm. The Seventh Circuit has held that requiring positive laboratory findings in cases of this nature is error. *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996) (ALJ erred in finding claimant non-disabled because of lack of positive laboratory tests) (cited approvingly in *Stewart v. Apfel*, 245 F.3d 793 (11th Cir. 2001) (table), 2000 U.S. App. LEXIS 33214 (unpublished opinion)[2]). In *Stewart*, the Court reviewed medical research on fibromyalgia, noting that it often lacks medical or laboratory signs, is generally diagnosed mostly on an individual's described symptoms, and its hallmark is a lack of objective evidence. Thus, the

---

[2]Unpublished decisions of this court are not binding precedent. See 11th Cir. R. 36–2.

ALJ's determination that a fibromyalgia claimant's testimony was incredible, based on the lack of objective evidence documenting the impairment, was reversed.  *Stewart,* 245 F.3d at 793, 2000 U.S.App. LEXIS 33214, at *9, n. 4.  More recently, the Eleventh Circuit addressed fibromyalgia in *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005), where it reiterated the impropriety of focusing on the absence of objective findings corroborating claims of the impairment.  Other Circuits that have considered the issue have found that fibromyalgia is a disease that can serve as the basis for a medically determinable impairment, even without positive laboratory findings.  *See, e.g.*, *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 817-18 (6th Cir. 1988) ("Fibrositis [now fibromyalgia] causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances," and diagnosis involves testing for focal tender points.)  Indeed, the Commissioner has instructed that in cases of chronic fatigue syndrome, a condition that, like fibromyalgia, is based largely on self-reported symptoms, "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points" is an example of a medical sign that establishes the existence of a medically determinable impairment.  Social Security Ruling 99-2p, 1999 WL 271569 (1999).

Accepting fibromyalgia as a severe condition, as the ALJ did here, does not automatically direct a finding of disabled, however.  Fibromyalgia may cause disabling pain, but it does not necessarily have to.  Therefore, having found Ms. Meredith's fibromyalgia to be severe, the ALJ was required to assess the severity of her pain.  **As this court is well aware,** pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."

*Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[3] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Adamo v. Commissioner of Social Sec.,* 365 Fed. Appx. 209, 2010 WL 476691, *3+ (11th Cir. 2010) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd*., 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor

---

[3]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

that can be considered.  *Marbury*, 957 at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision.  *MacGregor v. Bowen*, 786 F.2d at 1054.   Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true.  *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054.  Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

**Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[4]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical**

---

[4]**Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).**

impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

In support of his finding that Ms. Meredith's pain was not disabling the ALJ noted that she had only sporadic medical care before her date last insured, and none during the relevant period; that before the relevant period she primarily took over-the-counter medication for pain; that according to her testimony she could sit/stand/walk for 30 minutes at a time, could lift a gallon of milk, arose early in the morning and cleaned her home, cooked, did laundry, drove and went shopping. The ALJ also relied on the opinion of Dr. Schosheim, who opined, based on his review of the medical records, that Ms. Meredith could lift 20 pounds occasionally and ten pounds frequently; could walk and stand for two hours each and could sit for six hours in an eight hour workday (tr. 26).

Ms. Meredith argues that the flaw in the ALJ's reasoning was his insistence on some objective finding to support her claim, but that argument conflates two different issues. It is true that fibromyalgia is diagnosed without objective findings, but the ALJ found that Ms. Meredith had fibromyalgia. A finding concerning the degree of pain suffered, however, does not necessarily rely *only* on subjective complaints, so there was no error in the ALJ asking Dr. Schosheim whether he saw anything in the record that disclosed objective findings. The amount of pain a

claimant may credibly suffer is based on many factors. The ALJ weighed *all* the evidence (tr. 25). He did not consider only objective medical evidence in determining Ms. Meredith's residual functional capacity, he simply noted the lack of such evidence. It was not error for the ALJ to discount post-relevant period medical evidence. See *Anderson v. Schweiker,* 651 F.2d 306, 310 n. 3 (5th Cir.1981) (finding that a report having its basis on an examination that occurred after the claimant's insured status had ended was relevant "only for the light it sheds, if any, on [Plaintiff's] condition as it existed" prior to Plaintiff's date last insured); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (holding that only claimant's medical condition as of the date she was last insured is considered); *Barclay v. Commissioner of Social Sec. Admin.*, 274 Fed.Appx. 738, 740 (11th Cir. 2008) (ALJ properly disregarded a physician's opinion that claimant's disability began 5 months after last date insured). Furthermore, he applied the appropriate standard in assessing Ms. Meredith's credibility. It was entirely within the ALJ's realm of judging to find that Ms. Meredith's pain was not so severe as to be disabling. There was substantial record evidence to support the ALJ's finding of no disability, and Ms. Meredith is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 24th day of January, 2011.

/s/ *Miles Davis*

MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).**